FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Mar 29, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KATHLEEN O.,[1]

               Plaintiff,

     v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

           Defendant.

No.   2:22-cv-0104-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Kathleen O. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom reports, this matter is remanded for further proceedings.

///

//

/

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4] Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5] Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[6] Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. § 404.1520(a).

[3] *Id.* § 404.1520(a)(4)(i), (b).

[4] *Id.* § 404.1520(a)(4)(ii), (c).

[5] *Id.* § 404.1520(a)(4)(iii), (d).

[6] *Id.* § 404.1520(a)(4)(iv).

[7] *Id.* § 404.1520(a)(4)(v), (g).

## II.    Background

Plaintiff filed an application for disability benefits under Title because of degenerative disc disease, spinal stenosis, spinal arthritis, a labral tear in her right hip, diabetes, right shoulder dysfunction, congestive heart failure, depression, anxiety, and post-traumatic stress disorder (PTSD).[8] After the agency denied her application initially and on reconsideration, Plaintiff requested a hearing before an ALJ.[9] ALJ MaryAnn Lunderman held a telephonic hearing in January 2021, during which Plaintiff and a vocational expert testified.[10]

After the hearing, the ALJ denied Plaintiff's disability application.[11] As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2021.

- Step one: Plaintiff had not engaged in substantial gainful activity since April 10, 2018, the alleged onset date.

---

[8] AR 273–74. Plaintiff previously filed a claim for disability under Title 2 in 2015, alleging a disability onset date in 2013. This claim was denied by an ALJ in 2018. AR 123–41. In 2021, ALJ Lunderman found that Plaintiff had established changed circumstances and thus the presumption of continuing nondisability did not apply.

[9] AR 186–201.

[10] AR 87–122.

[11] AR 19–44.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar spondylosis; osteoarthritis of bilateral hips; bilateral shoulder degenerative joint disease, status post-surgery on the right; paroxysmal supraventricular tachycardia; congestive heart failure; chronic obstructive pulmonary disease; nicotine dependence; iron-deficiency anemia; type 2 diabetes mellitus; obesity; sleep apnea; depression; anxiety; PTSD; and agoraphobia.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with the following limitations:

  o no climbing of ladders, ropes, or scaffolds.

  o frequent climbing of ramps and stairs.

  o occasional stooping, kneeling, crouching, and crawling.

  o frequent reaching in all directions with the bilateral upper extremities, except only occasional overhead reaching.

  o occasional concentrated exposure to extreme cold and heat, humidity, pulmonary irritants, and hazards.

  o simple unskilled tasks with an SVP of 1 or 2 and reasoning level of 1 or 2 that can be learned in 30 days or less or by brief demonstration.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- o  occasional brief intermittent work-related contact with the public.

- o  occasional changes in the assigned work setting.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as routing clerk, office helper, and small products assembler.

In reaching her decision, the ALJ found each of the medical opinions "generally" persuasive: Patrick Metoyer, Ph.D. (consultative examination) and Lewis Weaver, M.D., Merry Alto, M.D., Carol Moore, Ph.D., and Matthew Comrie, Ph.D. (reviewing opinions).[12] The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence."[13] The ALJ did not mention the written statement from Plaintiff's husband about Plaintiff's symptoms.[14]

---

[12] AR 25–37, 154–63, 170–80, 683–88.

[13] AR 30–35. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[14] AR 316–23.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1

2

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[15] Plaintiff timely appealed to the Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[16] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[17] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Because it is the role of the ALJ to weight conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[19] Further, the

---

[15] AR 1–6.

[16] 42 U.S.C. § 405(g).

[17] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[18] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[19] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

Court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination."[20]

## IV.    Analysis

**A.    Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for discounting her physical and mental symptom reports. At the hearing, Plaintiff testified that it is painful to walk or stand for long periods and to sit in a regular chair for long periods, and that she still experiences pain, fatigue, and reduced range-of-motion in her right shoulder following surgery. She stated that she recently began using a walker to move around her house and that she gets dizzy when she stands up. She also testified that she struggles with concentrating and retaining information because of her anxiety, resulting stress, and pain associated with her physical impairments.[21]

1.    <u>Standard</u>

When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must consider several factors, including the claimant's daily activities, pain or other symptoms, medication, and other

---

[20] *Molina*, 674 F.3d at 1115 (cleaned up).

[21] AR 95–109.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1
2
3
4

treatments and measures to relieve pain or other symptoms.[22] If after considering the relevant factors the ALJ rejects the Plaintiff's symptom reports, as there is no affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons supported by substantial evidence.[23]

5

      2.    The ALJ's Findings as to Plaintiff's Physical Symptoms

6
7
8
9
10
11
12
13
14
15

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision."[24] The ALJ summarized several medical records discussing Plaintiff's diabetes, right hip, bilateral shoulder, respiratory, cardiac, and lumbar conditions, highlighting that other than the right-shoulder surgery most of Plaintiff's "care has been routine in nature," "many exams lack acute findings," and no "urgent emergency surgery" had been required.[25] The ALJ also found Plaintiff's testimony "of the near inability to walk, without the use of an assistive device, is not consistent with her report to her healthcare provider in 2020," to whom Plaintiff

16

_____

17
18
19

[22] 20 C.F.R. § 404.1529(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. (SSR) 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

20

[23] *Ghanim*, 763 F.3d at 1163.

21

[24] AR 30.

22
23

[25] AR 34.

1    reported that she "was going on short walks, was using a treadmill at home from

2    time to time, and was trying to walk around her apartment, and at a grocery

3    store."²⁶ The ALJ then proceeded to find:

4         [T]he evidence does establish some limitations in functioning due to
          the impairments and pain. The overall evidence supports the

5         limitations in the claimant's residual functional capacity findings. All
          of the claimant's physical impairments were considered when limiting

6         her to light work. Considering the musculoskeletal conditions and
          obesity, it is warranted to limit the claimant to not climbing ladders,

7         ropes, or scaffolds, and frequently climbing ramps and stairs with
          some postural activities limited to occasionally. The claimant's

8         shoulder conditions were considered when limiting reaching to
          frequently and only occasionally overhead. Diabetes and the cardiac

9         and respiratory disorders were further considered when assessing the
          environmental limitations limiting exposure to extreme cold and heat,

10        humidity, and pulmonary irritants. All of the claimant's impairments
          were considered when limiting her exposure to hazards.²⁷

11

12        The Commissioner argues the ALJ offered sufficient explanation for

13    discounting Plaintiff's symptom reports, emphasizing that the Court must look to

14    the entirety of the ALJ's decision.²⁸ Even when considering the ALJ's entire

15    decision, the Court finds the ALJ failed to provide clear and convincing reasons

16    supported by substantial evidence for discounting Plaintiff's physical-symptom

17    reports.

18

19    _____

20    ²⁶ AR 34.

21    ²⁷ AR 34.

22    ²⁸ ECF No. 14 at 4 (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)) .

23

The ALJ largely summarized several medical records and then jumped to setting forth RFC restrictions that the ALJ deemed consistent with the objective medical evidence. The few reasons clearly set forth by the ALJ for discounting Plaintiff's physical-symptom reports—that Plaintiff's symptom reports were inconsistent with the lack of acute findings, the routine medical care, the lack of emergent surgery, and her statement to a treating provider—are not convincing reasons supported by substantial evidence on this record to discount her physical-symptom reports.

### 3.    Objective Medical Evidence and the Lack of Acute Findings

The ALJ summarized some of the medical evidence pertaining to Plaintiff's orthopedic and other physical impairments and then discounted her symptom reports because the treatment examinations lacked acute findings.

Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[29] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical

---

[29] 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

evidence."[30] "Because pain is a subjective phenomenon . . . it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings."[31] Therefore, "[o]nce a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause *some* pain, it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the grounds that it is not fully corroborated by objective medical findings."[32] Therefore, the ALJ must clearly and convincingly explain why the objective medical findings are inconsistent with Plaintiff's symptom reports.[33] The ALJ failed to do so here.

The ALJ did not clearly and convincingly explain how the lack of acute findings is relevant to Plaintiff's chronic orthopedic conditions. An acute condition is one whose symptoms appear or worsen rapidly, such as a heart attack, while a

---

[30] *Smartt*, 53 F.4th at 498 (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

[31] *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (emphasis in original).

[32] *Id.* (cleaned up).

[33] *Ghanim*, 763 F.3d at 1163 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Burch*, 400 F.3d at 680 (explaining that an ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

chronic condition is one that develops and worsens over time.[34] The record reflects that Plaintiff's lumbar, hip, and shoulder impairments developed and worsened over time. For instance, in July 2018, Plaintiff reported right hip pain and right shoulder pain; she was observed with a limping gait and limited movement in her hip and right shoulder.[35] An MRI of the hips a month later revealed mild osteoarthritis with extensive anterosuperior labral tearing of the right hip and mild left hip osteoarthritis with mild bilateral greater trochanteric bursitis.[36] An MRI of the right shoulder revealed degenerative fraying of the labrum with partial thickness tear superior aspect extending anterior to posterior (SLAP tear).[37] After a cortisone injection to her hip, she was still observed with an antalgic gait, tenderness at her SI joint level, facet tenderness on the right L 4-5, and decreased lumbar range of movement; an x-ray of her lumbar spine revealed spinal stenosis

---

[34] *Acute vs. Chronic conditions*, National Library of Medicine, MedlinePlus, Bethesda, Maryland, *available at* Medlineplus.gov/ency/imagepages/18126.htm (last visited Feb. 14, 2023). *See Combs v. Berryhill*, 878 F.3d 641, 647 (8th Cir. 2017) (highlighting that the Commissioners conceded that the term "no acute distress" was not particularly relevant to the claimant's chronic rheumatoid arthritis).

[35] AR 520–25.

[36] AR 476–77.

[37] AR 532.

of the lumbar region with neurogenic claudication.[38] A subsequent lumbar MRI revealed several abnormalities at L1-2, L2-3, and L3-4, including diffuse disc bulges and a superimposed right paracentral disc protrusion, moderate hypertrophic facet osteoarthrosis, and ligamentum flavum hypertrophy at L2-3.[39]

In February 2019, Plaintiff received a lumbar facet steroid injection, which provided 50% relief.[40] She received a second lumbar facet injection in August 2019.[41] In October 2019, she was observed with a normal gait but her FADIR hip test and FABER test were positive; she reported that the lumbar injections "seemed to help her back pain [but] do not affect her hip pain."[42] A month later, she had a right hip arthrogram, which again showed degenerative fraying of the labrum with degenerative tear at the chondral labral junction, amongst other conditions.[43] That month she was observed with an antalgic gait and was referred to bariatric surgery.[44]

---

[38] AR 549–53.

[39] AR 402.

[40] AR 711–13, 400–02.

[41] AR 703–11.

[42] AR 864–70.

[43] AR 850–52.

[44] AR 878–84.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

　　　She continued seeing her primary care physician Dr. Shawn Baxter, who noted that Plaintiff's right hip osteoarthritis was worsening, and that orthopedics have declined surgical intervention until Plaintiff has bariatric surgery or loses substantial weight.[45] In April 2020, she began a weight loss program.[46] In June 2020, Plaintiff reported falling twice due to her hip pain, she was observed with an unsteady gait, limited internal rotation in her right hip, and a cane was recommended.[47] In July 2020, she sought treatment for her right shoulder pain; she was observed with bilateral shoulder pain and tenderness, reduced range of shoulder movement; and right shoulder surgery was recommended.[48]  That month Plaintiff had surgery on her right shoulder.[49]

　　　The record then reflects that for the next several months Plaintiff's medical care focused on physical therapy for her right shoulder, diabetes care, and weight loss treatments.[50] Then, in October 2020, Plaintiff reported increased back pain, and lumbar imaging revealed that her spondylosis had slightly progressed.[51] She

---

[45] AR 914–20.

[46] *See, e.g.*, 951–54, 955–57.

[47] AR 967–74.

[48] AR 985–90.

[49] AR 992–95.

[50] *See, e.g.*, AR 1011–48.

[51] AR 856–57.

was observed as being uncomfortable, with a slow, stiff gait, with weakness when trying to walk, and diminished sensation in the left lateral leg.[52] In November 2020, she was observed having difficulty with transitional movements and had limited range of lumbar extension and side bending.[53] In December 2020, during a neurosurgery appointment for her lumbar, she was observed with an antalgic gait, was unable to toe or heel walk, and had right leg weakness; the doctor determined that Plaintiff's lumbar conditions were likely contributing to her leg pain, leg weakness, and difficulty walking.[54]

Based on the imaging revealing chronic lumbar, hip, and shoulder impairments, as well as the observed altered gait and reduced range of motion, that there was a lack of acute findings is not a clear and convincing reason supported by substantial evidence to discount Plaintiff's physical-symptom reports.

4.    Routine Medical Care

A claimant's course of treatment, including whether symptoms improved with treatment, is a relevant factor for the ALJ to consider when assessing the

---

[52] AR 1048–49, 1050–56.

[53] AR 1068–74.

[54] AR 1146–57.

1
2
claimant's symptom reports.[55] Context is crucial when interpreting medical records as "treatment records must be viewed in light of the overall diagnostic record."[56]

3
4
5
6
7
8
9
10
The ALJ's analysis fails to convincingly explain, with evidentiary support, how Plaintiff's course of treatment was inconsistent with her reported symptoms. For instance, Plaintiff had surgery on her right shoulder, a surgery that eliminated some pain but did not resolve range-of-motion-limitations.[57] And Plaintiff received a steroid injection in her right hip that did not offer lasting relief.[58] Then she received epidural steroid injections in her lumbar; the injections helped with her back pain but not with her hip pain.[59] In November 2020, a treating physician stated that Plaintiff has:

11
12
> low back pain with radiation into bilateral anterior thighs and
> posterior thighs. Pain is consistent with MRI findings of lumbar

13
14
[55] 20 C.F.R. § 404.1529(c)(3). See *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

15
16
17
18
19
[56] *Ghanim*, 763 F.3d at 1164. *See Garrison*, 759 F.3d at 1017 (requiring the ALJ to carefully consider "indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity") (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

20
21
[57] AR 1063–64.

22
[58] AR 541, 549.

23
[59] AR 711, 1099–1100.

degenerative disc disease, central canal narrowing most significant at L3-L4 and L4-L5. Patient will require steroid injection versus surgery for any significant symptom relief . . . If again insurance denies the injection or she does not have significant relief a neurosurgery referral will be placed.[60]

Plaintiff also received a cortisone injection in her left shoulder.[61]

As the Ninth Circuit noted in *Garrison v. Colvin*, it is doubtful that "epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."[62] Not only did Plaintiff have steroid injections, it was also recommended that she have surgery to address her right hip and back pain, but her obesity and heart problems precluded the recommended surgeries.[63] Plaintiff then sought medical assistance to lose weight in order to have the surgeries.[64]

The ALJ fails to clearly and convincingly explain how Plaintiff's medical care, which included several epidural shots, surgery to her right shoulder, and

---

[60] AR 1083.

[61] AR 979, 984.

[62] 759 F.3d 995, 1015 n.20 (9th Cir. 2014).

[63] AR 919–20 ("Orthopedics have declined surgical intervention until patient has bariatric surgery or loses substantial weight."), AR 967 ("Right hip pain: known [osteoarthritis], has seen ortho who recommended replacement. Due to BMI, has been unable to have surgery.").

[64] AR 906, 913, 955–66.

weight-loss treatment with the end goal of having bariatric, hip, and lumbar surgery, is routine medical care.

     5.   <u>Lack of Urgent Emergency Care</u>

The ALJ also found Plaintiff's physical symptom reports not consistent with the lack of urgent emergency care. However, whether a claimant seeks urgent emergency care is not a controlling factor; rather, the ALJ must consider the nature of the impairment and the type and nature of medical care received for the impairment.[65]

Here, Plaintiff's physical-symptom reports focus on her lumbar, hip, and shoulder impairments, as impacted by her obesity. Plaintiff's diabetes and congestive heart failure also interplay with her obesity and orthopedic conditions. The ALJ fails to clearly and convincingly explain why the lack of urgent emergency care for the orthopedic conditions impacts the consideration of Plaintiff's reported difficulties standing, walking, and sitting. Treating providers did not question Plaintiff's reported symptoms associated with her lumbar, hip, and shoulder impairments. In fact, surgery on Plaintiff's right shoulder revealed a severely torn and retracted supraspinatus tendon, a frayed biceps, and incomplete tear of right

---

[65] *Ghanim*, 763 F.3d at 1164 (requiring the ALJ to consider the context of treatment records and discouraging the discounting of a claimant's reported symptoms based on nonrelevant normal findings).

rotator cuff.[66] Lumbar imaging revealed mild to moderate multilevel lumbar degenerative disk space narrowing with associated anterior and posterior osteophytic ridging, which had mildly progressed since the 2011 imaging, and multilevel facet arthrosis, below the level of L3-L4, which had also progressed since the 2011 imaging, with associated worsening osseous neuroforaminal narrowing.[67] A treating provider found the "acuity and character of [Plaintiff's] pain [was] consistent with lumbar disc herniation."[68] And imaging of Plaintiff's right hip indicated degenerative fraying of the anterosuperior acetabular labrum with degenerative tear at the chondral labral junction and small paralabral cyst and mild osteoarthritis and trochanteric bursitis.[69]

There is no evidence in this record that indicates medical professionals recommended that Plaintiff seek urgent emergency care for the diagnosed orthopedic conditions. On this record, the lack of urgent emergency care for these orthopedic conditions is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom reports.

---

[66] AR 902–03.

[67] AR 1074.

[68] AR 1074. *See also* AR 857 (revealing a concern for transiting nerve root impingement at L5-S1 and severe spinal canal narrowing at L3-L4 and L4-L5).

[69] AR 852.

6.    <u>Inconsistent Statements</u>

Finally, the ALJ discounted Plaintiff's reported difficulties walking without an assistive device because it was inconsistent with her statement to a healthcare provider in 2020 that she was going on short walks, using a treadmill at home from time to time, and trying to walk around her apartment and at the grocery store.

An ALJ may discount a claimant's symptom reports on the basis of inconsistent statements.[70] Here, Plaintiff's statement about her walking efforts was made to the registered dietician during Plaintiff's first weight loss consultation in April 2020, and this "walking-efforts" notation was continued throughout the subsequent weight-loss notes.[71] At the first consultation, Plaintiff also reported trying to exercise more and to make dietary changes and it was noted that Plaintiff had recently lost 6 pounds (then weighing 259 pounds).[72] As treatment progressed, other comments were added to the walking-efforts notation, including that Plaintiff "needs low impact exercise due to a hip that needs replacing and a bad knee," "needs hip replacement – having surgery on [right] shoulder," and "[e]xercise has

---

[70] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[71] AR 956.

[72] AR 956–57.

been difficult due to hip/joint pain," and she fell in the shower.[73] The weight-loss plan for Plaintiff did not focus on exercise or movement but instead on modifying eating habits and ceasing smoking.

In addition to these weight-loss records, medical records show that Plaintiff was unable to perform the Bruce treadmill exercise, a diagnostic test to evaluate cardiac function, at a cardiovascular office visit due to shortness of breath and leg fatigue.[74] In August 2019, she reported to her diabetes provider that she did not exercise 5 days a week for 30 minutes a day due to hip and back pain, and in December 2019 she reported to Dr. Baxter difficulties exercising due to musculoskeletal issues.[75] A medical record from June 2020 reflects that Plaintiff reported falling due to her right hip, that she was observed with an unsteady gait, and that a cane was recommended.[76] During an appointment in October 2020, she appeared uncomfortable, her gait was slow and stiff, and she had diminished sensation in her left lateral leg.[77]

Plaintiff's walking-efforts statement during her initial weight-loss-program must be considered along with her statements to other treating providers, as well

---

[73] *See, e.g.*, AR 966, 982–83, 996, 1004, 1025, 1046, 1061, 1077, 1088.

[74] AR 774-76.

[75] AR 746–48, 914–20.

[76] AR 967–74.

[77] AR 1051.

1    as with the imaging and observed reduced range of motion, altered gait, and pain.

2    The record reflects that Plaintiff did not exercise beyond these simple walking

3    efforts. Without more meaningful analysis, the ALJ fails to convincingly explain

4    how Plaintiff's statement about her limited walking efforts in the spring of 2020

5    was inconsistent with her statement to the ALJ in January 2021 that she uses a

6    walker in her house while ambulating.

7         7.    <u>Consequential Error</u>

8         The ALJ's error in weighing Plaintiff's physical-symptom reports is

9    consequential. It is unclear whether Plaintiff can perform light-duty work, which

10    requires an ability to stand or walk up to 6 hours each workday. If Plaintiff is

11    limited to sedentary work, she would be considered disabled under Medical

12    Vocational Guideline 201.14, given her age and nontransferable skills.[78]

13    **B.**    **Lay Witness: The ALJ must consider on remand.**

14         Plaintiff's husband submitted a Function Report about Plaintiff.[79] In

15    pertinent part, the husband stated that any "lifting, walking, etc." causes Plaintiff

16    pain due to her back problems and that she can walk the length of a store before

17    needing to rest a few minutes until the pain lessens.[80]

18

19

---

20    [78] 20 C.F.R. Part 404. Subpart P, App. 2, Rule 201.14.

21    [79] AR 316.

22    [80] AR 321.

23

The ALJ did not mention the husband's lay statement. The Commissioner argues that the ALJ did not error because the revised regulations do not require that an ALJ discuss how she analyzed nonmedical source evidence and, even if the ALJ should have discussed the evidence, Plaintiff is unable to show harm as the husband's statement was consistent with Plaintiff's rejected symptom reports.

As highlighted by the Commissioner, per regulation 20 C.F.R. § 404.1520c(d), the ALJ need not articulate whether a nonmedical source statement (as opposed to a medical source statement) is supported by or consistent with the evidence. However, once a medically determinable impairment is established, the Program Operations Manual System (POMS) directs the ALJ to "consider evidence from nonmedical sources for all other findings in [the] claim, as appropriate."[81] Accordingly, "when evidence from [a] nonmedical source is material to other analyses or conclusions in a claim," the ALJ must articulate that in the determination.[82] Here, the husband's statement is an important source of information about the limiting impacts of a Plaintiff's impairments.[83] Because the ALJ must reconsider Plaintiff's symptom reports on remand, the ALJ is to also reconsider the husband's lay statement.

---

[81] POMS DI 24503.020C.

[82] POMS DI 24503.020D.

[83] *See Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**C.      Remand for Further Proceedings is Required.**

The ALJ's error in weighing Plaintiff's physical-symptom reports requires remand. Therefore, the Court need not address Plaintiff's remaining arguments.[84] Because the record contains conflicting evidence about the extent—and timing—of Plaintiff's limitations and whether they limit her to sedentary work or otherwise preclude substantial gainful work, further administrative proceedings are necessary.[85]

On remand, the ALJ is to order a physical consultative examination to assess Plaintiff's physical abilities. The consultative examiner must be given sufficient medical records, including the most recent imaging of Plaintiff's shoulders, hips, and lumbar, to allow for a longitudinal perspective.[86] The ALJ is to then reconsider the medical evidence, Plaintiff's symptom reports, the husband's lay statement, and reevaluate the sequential process. If the ALJ again discounts Plaintiff's symptoms, the ALJ must articulate clear and convincing reasons for

---

[84] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison*, 759 F.3d at 1020.

[85] *See Smith v. Kijakazi*, 14 F.4th 1108, 1113–16 (9th Cir. 2021) (requiring the ALJ to assess whether impairments increased or decreased in severity over time).

[86] The record must clearly identify what medical records the examiner/expert reviewed.

doing so, including identifying what symptoms are being discounted and the evidence supporting the ALJ's finding.[87] Moreover, when assessing Plaintiff's mental-health symptoms, the ALJ must consider whether a mental-health finding made during an appointment for a physical condition provides relevant evidence as to Plaintiff's mental-health conditions.[88]

## V.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is

    **GRANTED**.

---

[87] *See Ghanim*, 763 F.3d at 1163.

[88] *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing psychologist's mental-health findings against findings from other mental-health professionals); *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *Orn v. Astrue*, 495 F.3d 615, 634 (9th Cir. 2007) (requiring examination notes to be read in their proper context).

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4.    This matter is **REVERSED and REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

5.    The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 29th day of March 2023.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge